UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ALBERT WILSON,<br><br>    Plaintiff,<br><br>vs.<br><br>AUDREY KING, *et al.*,<br><br>    Defendants. | Case No. 1:14-cv-00063-RRB<br><br>**ORDER DISMISSING**<br>**FIRST AMENDED COMPLAINT** |

At **Docket 10** Plaintiff William Albert Wilson, a civil detainee for treatment under the California Sex Offender Treatment Program ("SOTP"),[1] filed his First Amended Complaint ("FAC") with leave of court.[2] Wilson is in the custody of the California Department of State Hospitals ("DSH"), housed at the Coalinga State Hospital ("DSH-C"). Wilson brings this action against DSH and several state officials under the Civil Rights Act (42 U.S.C. § 1983), the Institutionalized Individuals Act (42 U.S.C. §§ 1997, *et seq.*), the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101, *et seq.*), the Rehabilitation Act ("RA") (29 U.S.C. §§ 701, *et seq.*), and a supplemental claim under the California Disabled Persons Act (Cal. Welfare & Institutions Code §§ 4500, *et seq.*) and the Unruh Civil Rights Act (Cal. Civil Code § 51).[3]

---

[1] Calif. Welfare & Inst. Code §§ 6604, 6606.

[2] *See* Order at Docket 7.

[3] In addition to Audrey King, Executive Director, Wilson names: Pam Ahlin, former
(continued...)

## I. SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[4] In screening the amended complaint the Court apples the same standards as were applied to the original Complaint. Those standards are set forth in the Court's prior Dismissal Order with Leave to Amend and need not be repeated here.

## II. GRAVAMEN OF COMPLAINT

Wilson is a developmentally-disabled person suffering from a brain abnormality that limits his learning ability and functionality to approximately the second-grade level.[5] As a result, Wilson alleges that in the absence of adequate assistance he is denied access to information, including: posted information on bulletin boards; menus; emergency exit

---

[3](...continued)
Executive Director; James Clark, former Supervisor Central Program Services; Peggy Thomas, former Program Director; Alan Campbell, Director, Program V; Barbara Rodriguez, Unit Supervisor; Yvonne Gonzales, former Equal Employment Coordinator; Susanna Lopez, Equal Employment Coordinator; James Perez, Equal Employment Manager; Long Mu, ADA Coordinator; Reimi Smith, Central Program Services Administrator; Baltazar Villarreal, Behavior Specialist, Sex Offender Program; Efrat Mazin, Pyschologist; and Helen Sierra, HIPAA Compliance Officer. Although named as Defendants in his original Complaint, Wilson omits from his FAC: Brian Bowley, Program Director; Javier Saldivar, Psychologist; Adam Fogel, Psychologist; and John Catano, Acting Chief Central Program Services. Consequently, the Court assumes Wilson is abandoning all claims against those individuals.

[4] 28 U.S.C. § 1915A(a). The Ninth Circuit has applied this requirement to civil detainees. *See Williams v. Coleman*, 536 Fed. Appx. 694 (9th Cir. 2013).

[5] The Court notes that Wilson's First Amended Complaint, as was his original Complaint, was prepared with the assistance of another detainee. Wilson attests that, before signing the First Amended Complaint, it was read and explained to him, and that the document correctly reflects the facts as known to him.

information; Wellness and Recovery Progress Team Reports; assigned SOTP homework assignments; and SOTP treatment manuals/books.

At the heart of this case is whether or not Wilson is provided sufficient assistance for him to successfully complete the SOTP. Wilson contends that: (1) he is denied qualified assistance to assist him in reading; (2) is not provided a reliable, functional tape recorder; (3) is not provided adequate cassette tapes to retain recorded information; (4) his written class work materials is not transcribed onto audio tapes/CDs; (5) computer software is not properly installed or maintained; and (6) he is not provided a sound-proof private area within which to utilize audio equipment. Although it is not entirely clear from the Complaint, Wilson appears to contend that, while DSH and CSH ostensibly have adequate written policies in place, the actual customs and practices of the Defendants, acting individually and collectively, effectively deny him the benefit of those services.[6] Consequently, Wilson is unable to complete his treatment, thereby delaying his release.

In his First Amended Complaint Wilson asserts 16 separate systemic "violations" against various individual Defendants and one against Coalinga State Hospital. These violations are summarized as follows.

*Violation I*. Alleges that as a result of the failure of Defendants Ahlin and King as Executive Directors to properly supervise their subordinates, Wilson was denied the benefits of an internal directive intended to provide necessary and appropriate accommodations for his learning disabilities in violation of the ADA and RA.

---

[6] The FAC itself consists of more than 100 typed pages (397 paragraphs exclusive of the prayer for relief), to which is attached over 550 pages of exhibits.

*Violation II*. Alleges that Defendants Ahlin and King effectively denied him the rights and benefits of certain Administrative Directives regarding the right to file discrimination complaints by failing to ensure that information concerning those directives was posted in his housing unit. In particular, Wilson contends that Ahlin and King failed to ensure that critical information was made available to him in audio or digital format. Wilson further contends that Ahlin and King failed to oversee proper training to ensure that the anti-discrimination policies were followed and patients were properly informed of those policies. Wilson contends this violated the ADA and the RA.

*Violation III*. Directed against Defendant Ahlin, this appears to allege in failing to properly train and supervise the actions of her subordinates in the requirements of the ADA and RA, Ahlin failed to ensure that the needs of Wilson were properly addressed.

*Violation IV*. Directed against Defendant King this violation concerns an alleged failure to timely replace his digital recorder. Wilson alleges that as result of the failure of King to ensure that all departments were properly informed of Wilson's needs he was unable to obtain timely replacement of his digital recorder.

*Violation V*. Also directed against Defendant King, Wilson alleges King's failure to either actually personally investigate Wilson's claims or direct the EEO Coordinator to make that investigation, violated Wilson's rights under the ADA and RA.

*Violation* VI. Directed against Defendant Reimi Smith (formerly the Mail Services Director), Wilson alleges that she violated the ADA and RA by failing to: (1) ensure assigned computers with functioning Dragon Naturally Speaking software were available;

(2) provide qualified and competent instructors in the use of the Dragon Naturally Speaking software; and (3) ensure that Wilson's SOTP treatment needs were met and all relevant materials made available to him in audio/digital format. Wilson further contends that Smith's failures constitute deliberate indifference.

*Violation VII*. Wilson contends that because Defendant Peggy Thomas (formerly the Director, Program V) failed to properly train and supervise staff under her supervision, Wilson was denied the services he was entitled to under the ADA and RA as specified in the 2007-RA. Although not entirely clear, it appears that Wilson alleges that Thomas failed to properly safeguard certain thumb drives containing educational material relevant to Wilson's treatment. Wilson also alleges that, although Thomas was specifically informed of the need to address Wilson's concerns, Thomas failed to either meet with him or take any action whatsoever to ensure that those needs were met.

*Violation VIII*. Directed against Defendant Alan Campbell (the successor to Thomas as Director, Program V), it appears to allege that Campbell failed to intervene and properly train his subordinates in violation of the ADA and RA.

*Violation IX (Rodriguez)*. Wilson alleges that Barbara Rodriguez (formerly the Psychiatric Technician Supervisor), failed to intervene on Wilson's behalf to ensure that his needs were met or that he received the benefits of the 2007-RA. More specifically, Wilson contends that Rodriguez failed to: (1) ensure all SOTP and treatment facilitators participated in his WRP Teams; (2) ensure that his documents and materials were converted to audio or digital format; (3) ensure that working tape recorder and tapes were

always available for use; (4) enforce the internal directives; and (5) failed to protect Wilson from the abuses of treatment facilitators.

*Violation IX (Gonzales)*. With respect to Yvonne Gonzales (formerly the Equal Opportunity Coordinator), Wilson alleges that she did not properly investigate his allegations of discrimination. Therefore, according to Wilson, he was denied the rights and protections afforded by the ADA, RA and various state and federal regulations to which he was entitled.

*Violation X*. Wilson's allegations against Susana Lopez (the successor Equal Opportunity Coordinator) essentially mirror those made against her predecessor, Gonzales.

*Violation XI*. Reduced to its essence, Wilson appears to allege that, although he had knowledge of Wilson's complaints, James Perez, the Equal Opportunity Manager, Office of Human Rights, DSH, erroneously denied that any form of discrimination against Wilson exists. In particular, it appears that Wilson contends that Perez had an obligation to personally investigate Wilson allegations. Instead, according to Wilson, Perez simply relied upon the investigations of others.

*Violation XII*. Wilson alleges that Long Mou, the Coalinga ADA Coordinator, has failed to provide for his needs. The allegation against Mou appears to be based solely upon Mou's status as the ADA Coordinator. Nothing in the FAC or any of its voluminous exhibits reveals any direct involvement by Mou with any of the alleged deficiencies.

*Violation XIII*. Wilson alleges that Baltazar Villarreal, the Behavior Specialist who apparently oversaw Wilson's treatment as the core facilitator, deliberately and willfully

interfered with and delayed Wilson's treatment program in various ways and means in violation of the ADA and RA. As a result, Wilson's advancement to the next phase of the program was unnecessarily delayed, which resulted in a further delay in Wilson's release.

*Violation XIV*. Here Wilson alleges that Efrat Mazin, his lead core facilitator, disregarded Wilson's complaints that he was unable to complete his homework assignments. In particular, Wilson alleges that Mazin: (1) disregarded his difficulties in using the Dragon Natural Speaking program; (2) inferred that Wilson was "faking" his needs; and (3) failed to have critical material transcribed and provided to him in advance.

*Violation XV*. Directed primarily against Helen Sierra, Privacy Officer,[7] Wilson alleges that allowing a patient to dictate his 2011-RA onto a thumb drive violated his privacy rights under the Health Insurance Portability and Accountability Act ("HIPPAA"). Wilson's allegations appear to challenge the determination made on administrative appeal that no HIPPAA violation had occurred.

*Violation XVI*. Directed at DSH-C, Wilson challenges the practice of charging patients with the cost of copying and mailing legal papers, i.e., those sent to attorney's and courts by indigent patients. Wilson also asserts that, because the address for the California Office of Patient Rights posted on the bulletin board in his housing unit contains an out-dated address, his complaint sent to that office was returned as being undeliverable.

Based upon those voluminous alleged violations Wilson's Complaint sets forth six claims for relief. In each of those claims for relief Wilson incorporates by reference all of

---

[7] Wilson also appears to include allegations against Defendants Ahlin, King, and Smith.

the prior allegations. Such "daisy-chain" allegations, coupled with the fact that in each claim Wilson prays for judgment against all the Defendants and each of them, makes it difficult for both the Court and the Defendants to ascertain with any degree of certainty which legal claim or cause of action is directed against which Defendant or Defendants.

*First Claim for Relief*. Wilson's first claim alleges that, in failing to provide for his developmental disability, DSH violated Wilson's rights under the ADA, RA, and applicable state laws. In particular, Wilson alleges that the actual practices of DSH substantially depart from the written policies. As a result the aid, benefits, and services Wilson received were so deficient as to constitute a deliberate indifference to his serious medical needs.

*Second Claim for Relief*. In his second claim Wilson alleges that the DSH grievance system is so deficient that it violates the ADA and the First Amendment.

*Third Claim for Relief*. In this claim Wilson alleges that the failure of the Defendants to adequately and properly provide for his needs violated his statutory and due process rights.

*Fourth Claim for Relief*. Here Wilson alleges that the Defendants subjected him to punitive and harsh conditions of confinement, subjected him to discrimination because of his disability, depriving him, as developmentally disabled person, from meeting his daily needs and the benefits of his treatment.

*Fifth Claim for Relief*. In this claim Wilson contends that the deficiencies in his treatment constituted a substantive due process violation under the Fourteenth Amendment.

*Sixth Claim for Relief*. Wilson contends that the disparity in the assistance given to him and that given to Spanish-speaking and deaf/hearing impaired inmates in the SOTP and other programs constitutes a denial of equal protection under the Fourteenth Amendment.

Wilson seeks: (1) declaratory and injunctive relief; (2) compensatory damages at the rate of $4,000/day for each claim; and (3) punitive damages.

## III.   DISCUSSION

Reduced to its essence, Wilson's claim is that he is not receiving the treatment to which he is entitled as an individual adjudicated as a sexually violent predator. Because of this failure to provide him with adequate and appropriate treatment for his disability, Wilson's confinement under the California SVPA has been unnecessarily prolonged. Wilson contends that the failure to provide him appropriate treatment falls within the parameters of a deliberate indifference claim under the Eighth Amendment, and violates the ADA and RA.

The Constitution "requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."[8] "Adequate and effective treatment is constitutionally required because, absent treatment, appellants could be held indefinitely as a result of their mental illness . . .."[9] As the Supreme Court held more than a half-century ago:

---

[8] *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)).

[9] *Id.* (quoting *Ohlinger*).

> (I)nvoluntary confinement for the "status" of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions . . . unless it is accompanied by adequate treatment.[10]

Initially, the Court notes that Wilson suffers a mental impairment that substantially limits one or more of his major life activities, clearly falling within the scope of a "disability" as defined in the ADA and RA.[11] The Court further notes that with respect to the claims made under the ADA and RA, because the State of California does not enjoy the benefits of the Eleventh Amendment as to those claims, Wilson is not barred from bringing this action against either DSH or the individual Defendants in their official capacities.[12] Nor does the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act[13] apply to an individual who, as has Wilson, has been released from prison altogether.[14] **Thus, Wilson need not, nor should he, attach copies of documents solely for the purpose of establishing proper exhaustion of administrative remedies**.

As noted in its earlier Order dismissing the Complaint, complicating resolution of this case in this Court is the existence of a Resolution Agreement dated June 11, 2007 ("2007-RA"), which appears to have been accepted by Wilson. As with his original Complaint, It

---

[10] *Robinson v. California*, 370 U.S. 660, 665–67 (1962).

[11] 42 U.S.C. § 12102(2); see *Olmstead v. I.C.. ex rel. Zimring*, 527 U.S. 581, 589 (1999).

[12] *See Clark v. State of Calif.*, 123 F.3d 1267, 1269–71 (9th Cir. 1997).

[13] 42 U.S.C. § 1997e(a).

[14] *Talamantes v. Leyva*, 575 F.3d 1021, 1023–24 (9th Cir. 2009) (citing *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (the PLRA does not apply to individuals civilly committed under the California Sexually Violent Predators Act)).

is unclear the extent to which Wilson is seeking to compel Defendants to comply with the 2007-RA, a specific performance action founded in contract; or is alleging that the 2007-RA is inadequate. To the extent that Wilson is seeking to enforce his contractual rights under the 2007-RA, his entitlement to relief is exclusively a matter of state law, not within the purview of the jurisdiction of this Court.[15] This Court is a court of limited jurisdiction, having only that jurisdiction conferred on it by the Constitution or statute.[16] Furthermore, this Court must "presume[ ] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[17] While this Court may exercise its supplemental jurisdiction over state law claims, that jurisdiction exists only where joined with an independent claim "that [is] so related to claims within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[18] In further amending his complaint Wilson should clearly indicate the extent to which he contends that the act(s) of each Defendant *both* (1) falls outside the scope of the 2007-RA *and* (2) violates some right arising under Federal law or the Constitution.  *In short, if compliance with the 2007-RA would eliminate all claims Wilson has under Federal law or Constitution Wilson does not have a claim cognizable in this Court*.

---

[15] *See Aladdin Hotel Corp. v. Nevada Gaming Comm.*, 637 F.2d 582, 584 (9th Cir. 1980).

[16] *Exxon Mobil Corp. v. Allapatattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

[17] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[18] 28 U.S.C. § 1367.

Also potentially complicating this matter is the existence of a civil action filed in the Fresno County Superior Court, *William Wilson v. Audrey King*, Case No. 12CECG03490, referred to in Wilson's First Amended Complaint.[19] To the extent Wilson raised, or could have raised, the same claims in his state-court action as he raises in this action, his action in this Court may be barred by the doctrine of another action pending or, if that action has concluded, by the doctrine of *res judicata*.[20] ***As this is an affirmative defense to be raised by the Defendants, although he should consider it deciding whether or not to further pursue this action in this Court, Wilson need not, nor should he, address the issue in further amending his complaint***.

The Court may summarily dispose of two alleged "violations," XV and XVI:

Violation XV. Wilson's contention that allowing a fellow inmate to record his 2007-RA onto tape violates HIPPA also fall far short. The Court's review of the 2007-RA[21] indicates that nothing in it contains any personal medical information that falls within the

---

[19] Docket 10, ¶¶ 249–50 (p. 68) and Exh. 48 (pp. 479–83).

[20] See *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) (in § 1983 actions, a federal court must apply the *res judicata* law of the state in which the judgment was entered); *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles,* 126 Cal. App.4th 1180, 24 Cal. Rptr.3d 543, 557–58 (2004) (California's doctrine of "[r]es judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated" when, among other things, both actions involve the same "primary right"); *see also Dyson v. Cal. State Pers. Bd.,* 213 Cal. App.3d 711, 262 Cal. Rptr. 112, 118–20 (1989) (discussing privity requirement and explaining that "agents of the same government are in privity with each other, since they represent not their own rights but the right of the government" (citation and internal quotation marks omitted)).

[21] Two copies of which are attached to the FAC as Exh. 4 (Docket 10, pp. 181–85).

scope of HIPPA. Thus, that alleged violation does not constitute a claim upon which relief may be granted.

<u>Violation XVI</u>. Wilson contends the requirement that he pay for copying his complaint and the legal documents attached thereto violates his right of access to the courts. Although federal law addresses the payment of a filing fee by an indigent prisoner,[22] there is no authority, statutory or Constitutional, that requires a State to provide free copying services for pleadings and papers to be filed with the court. Indeed, as described by Wilson, the manner in which the State treats copying charges is identical to and consistent with manner in which the Federal statute requires with respect to filing fees for indigent prisoners. Wilson's Violation XVI also fails to state a claim upon which this Court may grant relief.

Likewise, the Court may summarily dispose of three causes of action: the Second, Third, and Sixth:

<u>Second and Third Causes of Action.</u> Wilson's Second and Third Causes of Action are essentially mirrors of each other. Both contend that in reviewing his complaints, various levels of review failed to adequately investigate his allegations, instead relying on the findings or determinations made by others. Neither the ADA nor due process require each level of review personally investigate the allegations made. Due process is satisfied where the grievant is provided the opportunity to present his grievances to the appropriate State

---

[22] 28 U.S.C. § 1915.

official.[23] Wilson's complaint is not that he was denied due process or any specitic requirement of the ADA, but that the reviewing officials incorrectly decided his grievances.

Sixth Cause of Action. Wilson's equal protection claim also fails. That the educationally disabled do not constitute a "suspect class" for equal protection purposes is well-established in this Circuit.[24]

With respect to his remaining claims, as noted above, as presently drafted neither the Court nor any of the named Defendant can determine the extent to which Wilson seeks to enforce the terms of the 2007-RA and the extent to which he seeks relief under Federal law independent of the 2007-RA. That is, Wilson has failed to allege facts entitling him to any relief under Federal law *in addition to* that which he would receive if the 2007-RA were enforced. As this Court noted in dismissing the Complaint, to the extent that Wilson seeks to enforce the 2007-RA his appropriate remedy is a specific enforcement action in the California state courts.

## IV. ORDER

The First Amended Complaint as against Defendants James Perez, Long Mou, Yvonne Gonzales, Susanna Lopez, and Helen Sierra, and the Second, Third, and Sixth Causes of Action are hereby **DISMISSED** without leave to amend.

---

[23] *See Johnson v. Rocha*, 128 Fed. Appx. 586, 587-88 (9th Cir. 2005) (citing *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999)).

[24] *See Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1049–50 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686–87 (9th Cir. 2001)).

In all other respects the First Amended Complaint is hereby **DISMISSED** with leave to amend. In amending his complaint Plaintiff should:

1.  specifically and separately identify those acts falling outside the scope of the 2007-RA that he contends violated a Federally protected right; and

2.  attach copies of only those documents specifically referred to and incorporated in the body of the complaint.

Plaintiff is hereby granted through and including **October 2, 2015,** within which to file his Second Amended Complaint consistent with this Order.

**IT IS SO ORDERED** this 11th day of August, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE