UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ALBERT WILSON,<br><br>    Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF STATE HOSPITALS – COALINGA, *et al.*,<br><br>    Defendants. | Case No. 1:14-cv-00063-RRB<br><br>**ORDER DISMISSING<br>SECOND AMENDED COMPLAINT** |

At **Docket 24** Plaintiff William Albert Wilson, a civil detainee for treatment under the California Sex Offender Treatment Program ("SOTP"),[1] filed his Second Amended Complaint ("FAC") with leave of court.[2] Wilson is in the custody of the California Department of State Hospitals ("DSH"), housed at the Coalinga State Hospital ("DSH-C"). Wilson brings this action against DSH-C and several state officials under the Civil Rights Act (42 U.S.C. § 1983), the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101, *et seq.*), the Rehabilitation Act ("RA") (29 U.S.C. §§ 701, *et seq.*), and a supplemental claim under the Unruh Civil Rights Act (Cal. Civil Code § 51).[3]

---

   [1] Calif. Welfare & Inst. Code §§ 6604, 6606.

   [2] Prior Orders at Dockets 7, 13.

   [3] In addition to the Department of State Hospitals – Coalinga, Wilson names: Audrey King, Executive Director, Pam Ahlin, former Executive Director; Barbara Rodriguez, Unit Supervisor; Reimi Smith, former Central Program Administrator, Mall Director; Baltazar Villarreal, Behavior Specialist II, Sex Offender Program; and Efrat Mazin, Pys.D., Sex
(continued...)

## I.  SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity,[4] including complaints brought by civil detainees.[5] In screening the amended complaint the Court apples the same standards as were applied to the original Complaint. Those standards are set forth in the Court's initial Dismissal Order and need not be repeated here.

## II.  GRAVAMEN OF COMPLAINT

Wilson is a developmentally-disabled person suffering from a brain abnormality that limits his learning ability and functionality to approximately the second-grade level.[6] As a result, Wilson alleges that in the absence of adequate assistance he is denied access to information, including: posted information on bulletin boards; menus; emergency exit information; Wellness and Recovery Progress Team Reports; assigned SOTP homework assignments; and SOTP treatment manuals/books.

At the heart of this case is whether or not Wilson is provided sufficient assistance for him to successfully complete the SOTP. Wilson contends that: (1) he is denied qualified assistance to assist him in reading; (2) is not provided a reliable, functional tape recorder;

---

[3](...continued)
Offender Treatment Facilitator.

[4]  28 U.S.C. § 1915A(a).

[5]  *See Williams v. Coleman*, 536 Fed. Appx. 694 (9th Cir. 2013).

[6]  The Court notes that Wilson's Second Amended Complaint, as were his original and First Amended Complaint, was prepared with the assistance of another detainee. Wilson attests that, before signing the Second Amended Complaint, it was read and explained to him, and that the document correctly reflects the facts as known to him.

(3) is not provided adequate cassette tapes to retain recorded information; (4) his written class work materials is not transcribed onto audio tapes/CDs; (5) computer software is not properly installed or maintained; and (6) he is not provided a sound-proof private area within which to utilize audio equipment.  Although it is not entirely clear from the Complaint, Wilson appears to contend that, while DSH ostensibly has adequate written policies in place, the actual customs and practices of the Defendants, acting individually and collectively, effectively deny him the benefit of those services. Consequently, Wilson is unable to complete his treatment, thereby delaying his release.[7]

In his Second Amended Complaint Wilson asserts five separate systemic "violations" against various individual Defendants and one against DSH-C. These violations, which occurred over a period spanning Wilson's arrival at DSH-C in 2006 through December 2015, are summarized as follows.

*Claim I*.  Alleges that as a result of the failure of Defendants Ahlin and King as Executive Directors to properly supervise their subordinates, protect him from mistreatment by their subordinates, and properly implement or enforce internal directives, Wilson was denied the benefits of an internal directive intended to provide necessary and appropriate accommodations for his learning disabilities in violation of the ADA and RA.

*Claim II*.  Directed against Defendant Smith (formerly the Mall Services Director), Wilson alleges that she violated the ADA and RA by failing to: (1) ensure assigned

---

[7] At the time he filed his initial Complaint, Wilson had not completed the second phase of his treatment program.  In his Second Amended Complaint, Wilson alleges that he did complete the second phase and advanced to the third phase at some unspecified date.  Wilson further alleges that he quit the SOTP group in November 2015.

computers with functioning Dragon Naturally Speaking software were available; (2) provide qualified and competent instructors in the use of the Dragon Naturally Speaking software; and (3) ensure that Wilson's SOTP treatment needs were met and all relevant materials made available to him in audio/digital format. Wilson further contends that Smith's failures constitute deliberate indifference.

*Claim III*. Wilson alleges that Rodriguez failed to intervene on Wilson's behalf to ensure that his needs were met. More specifically, Wilson contends that Rodriguez failed to: (1) ensure all SOTP and treatment facilitators participated in his WRP Teams; (2) ensure that his documents and materials were converted to audio or digital format; (3) ensure that working tape recorder and tapes were always available for use; (4) enforce the internal directives; (5) failed to protect Wilson from the abuses of treatment facilitators; (6) failed to provide him adequate access to the courts in connection with a pending state-court action; and (7) failed to obtain, complete, and send medical forms to the physician's office in connection with knee replacement surgery.

*Claim IV*. Wilson alleges that Villarreal, the Behavior Specialist who apparently oversaw Wilson's treatment as the core facilitator, deliberately and willfully interfered with and delayed Wilson's treatment program in various ways and means in violation of the ADA and RA. As a result, Wilson's advancement to the next phase of the program was unnecessarily delayed, which resulted in a further delay in Wilson's release.

*Claim V*. Here Wilson alleges that Efrat Mazin, his lead core facilitator, disregarded Wilson's complaints that he was unable to complete his homework assignments. In

particular, Wilson alleges that Mazin: (1) disregarded his difficulties in using the Dragon Natural Speaking program; (2) inferred that Wilson was "faking" his needs; and (3) failed to have critical material transcribed and provided to him in advance.

*Claim VI*.  Contends that DSH-C failed to: (1) provide adequate training for its staff; (2) provide Wilson with the sufficient individualized assistance in all aspects of his life; and (3) protect him from abuse.

Wilson seeks:  (1) declaratory and injunctive relief; (2) compensatory damages at the rate of $4,000/day for each violation, or $5,000,000, whichever is greater; and (3) punitive damages of $10,000,000, and $500,000 as against each Defendant, personally.

## III.   DISCUSSION

Reduced to their essence, Wilson's claims are that he is not receiving the treatment to which he is entitled as an individual adjudicated as a sexually violent predator.  Because of this failure to provide him with adequate and appropriate treatment for his disability, Wilson's confinement under the California SVPA has been unnecessarily prolonged.  Wilson contends that the failure to provide him appropriate treatment falls within the parameters of the Civil Rights Act, and violates the ADA and RA.

The Constitution "requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released."[8]  "Adequate and effective treatment is constitutionally required because, absent

---

[8] *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger v. Watson*,
(continued...)

treatment, appellants could be held indefinitely as a result of their mental illness . . ..."[9] As the Supreme Court held more than a half-century ago:

> (I)nvoluntary confinement for the "status" of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions . . . unless it is accompanied by adequate treatment.[10]

Initially, the Court notes that Wilson suffers a mental impairment, an inability to read or write at or above the second grade level, that substantially limits one or more of his major life activities, clearly falling within the scope of a "disability" as defined in the ADA and RA.[11] The Court further notes that with respect to the claims made under the ADA and RA, because the State of California does not enjoy the benefits of the Eleventh Amendment as to those claims, Wilson is not barred from bringing this action against either DSH or the individual Defendants in their official capacities.[12] Nor does the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act[13] apply to an individual who, as has Wilson, been released from prison.[14]

---

[8](...continued)
652 F.2d 775, 778 (9th Cir. 1980)).

[9] *Id.* (quoting *Ohlinger*).

[10] *Robinson v. California*, 370 U.S. 660, 665–67 (1962).

[11] 42 U.S.C. § 12102(2); *see Olmstead v. I.C.. ex rel. Zimring*, 527 U.S. 581, 589 (1999).

[12] *See Clark v. State of Calif.*, 123 F.3d 1267, 1269–71 (9th Cir. 1997).

[13] 42 U.S.C. § 1997e(a).

[14] *Talamantes v. Leyva*, 575 F.3d 1021, 1023–24 (9th Cir. 2009) (citing *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000) (the PLRA does not apply to individuals civilly (continued...)

As noted in its first Order dismissing the Complaint, complicating resolution of this case in this Court is the existence of a Resolution Agreement dated June 11, 2007 ("2007-RA"), which appears to have been accepted by Wilson.  In his FAC, as with his original Complaint, it was unclear the extent to which Wilson sought to compel Defendants to comply with the 2007-RA, a specific performance action founded in contract; or is alleging that the 2007-RA is inadequate. The Court noted in dismissing the FAC that to the extent that Wilson sought to enforce his contractual rights under the 2007-RA, his entitlement to relief is exclusively a matter of state law, not within the purview of the jurisdiction of this Court.[15]  The Court also noted:

> In further amending his complaint Wilson should clearly indicate the extent to which he contends that the act(s) of each Defendant *both* (1) falls outside the scope of the 2007-RA *and* (2) violates some right arising under Federal law or the Constitution. *In short, if compliance with the 2007-RA would eliminate all claims Wilson has under Federal law or Constitution Wilson does not have a claim cognizable in this Court*.[16]

The Court further noted:

> With respect to his remaining claims, as noted above, as presently drafted neither the Court nor any of the named Defendant can determine the extent to which Wilson seeks to enforce the terms of the 2007-RA and the extent to which he seeks relief under Federal law independent of the 2007-RA.  That is, Wilson has failed to allege facts entitling him to any relief under Federal law *in addition to* that which he would receive if the 2007-RA were enforced.  As this Court noted in dismissing the Complaint, to the extent that

---

[14](...continued)
committed under the California Sexually Violent Predators Act)).

[15] Docket 13, p. 11 (citing *Aladdin Hotel Corp. v. Nevada Gaming Comm.*, 637 F.2d 582, 584 (9th Cir. 1980)).

[16] *Id.* (emphasis in the original).

Wilson seeks to enforce the 2007-RA his appropriate remedy is a specific enforcement action in the California state courts.[17]

In his SAC Wilson contends that the 2007-RA was not a "contract" and that none of his claims cite or use the 2007-RA as their basis. Wilson is incorrect in his contention that the 2007-RA is not a "contract." Contrary to Wilson's contention, whether or not his claims specifically cite or use the 2007-RA as their basis does *not* eliminate the effect of the 2007-RA on this action. That is, if the act complained of is covered by the 2007-RA, it falls within its scope and the appropriate remedy is enforcement of the 2007-RA in the state courts, not an independent action in this Court. Furthermore, the SAC is inconsistent in this respect. Specifically, Wilson alleges:

> Plaintiff avers that due to the diligence of his friends and fellow patients, he was able to have the United States Department of Health & Human Services, Office of Civil Rights, compel the Department of State Hospitals to enter into an agreement identified as the Resolution Agreement of 2007 (RA-2007), which guaranteed that aid, accommodations, benefits and services would be provided Plaintiff to ensure that Plaintiff could participate on an equal footing with his peers. This RA-2007 received lip service by Department of State Hospitals-Coalinga (Coalinga) and Defendants and was never fully implemented. As such, Plaintiff was denied the very aid and services promised.[18]

This very allegation, if true, completely eliminates any basis for asserting the jurisdiction of this Court.

As noted in the Order dismissing the FAC, also potentially complicating this matter is the existence of a civil action filed in the Fresno County Superior Court, *William Wilson*

---

[17] *Id.*, p. 14.

[18] Docket 24, p. 2.

*v. Audrey King*, Case No. 12CECG03490, referred to in Wilson's FAC,[19] but omitted from his SAC.  ***Wilson is again cautioned that to the extent he raised, or could have raised, the same claims in his state-court action as he raises in this action, his action in this Court may be barred by the doctrine of another action pending or, if that action has concluded, by the doctrine of res judicata.***[20]

In preparing and filing his Second Amended Complaint Wilson failed to adhere to the specific instructions given by the Court.  Thus, this action is subject to dismissal.[21]  In this case the Court will grant Wilson an additional opportunity to amend his complaint to the extent such amendment is consistent with the Court's orders.  Alternatively, Wilson may elect to pursue his appropriate remedy under state law in the California state courts.

***Wilson is cautioned that continuing to pursue this action as presently constituted without filing an action in the appropriate California state court creates***

---

[19] Docket 10, ¶¶ 249–50 (p. 68) and Exh. 48 (pp. 479–83).

[20] See *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) (in § 1983 actions, a federal court must apply the *res judicata* law of the state in which the judgment was entered); *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles,* 126 Cal. App.4th 1180, 24 Cal. Rptr.3d 543, 557–58 (2004) (California's doctrine of "[r]es judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated" when, among other things, both actions involve the same "primary right"); *see also Dyson v. Cal. State Pers. Bd.,* 213 Cal. App.3d 711, 262 Cal. Rptr. 112, 118–20 (1989) (discussing privity requirement and explaining that "agents of the same government are in privity with each other, since they represent not their own rights but the right of the government" (citation and internal quotation marks omitted)).

[21] Fed. R. Civ. P. 41(b); *see Yourish v. California Amplifier*, 191 F.3d 983, 986–87 (9th Cir. 1999).

*a significant risk that whatever remedy he may have with respect to the Resolution Agreement under California law may be lost*.

## IV.   ORDER

The Second Amended Complaint is hereby **DISMISSED** with leave to amend. In amending his complaint Plaintiff *must*:

1. Adhere to the Federal Rules of Civil Procedure regarding pleadings, in particular, Rule 8(a), which provides—

> (a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

2. Specifically and separately identify those acts falling outside the scope of the 2007-RA that he contends violated a Federally protected right.

3. With respect to each claim plead without legal argument or citation to authority the facts entitling him to relief:  (1) the identity of the person doing the act; (2) description of the act and the date it occurred; (3) the harm/injury suffered as a result; and (4) the specific relief requested, e.g., amount of monetary damages.

4. ***Do not*** include allegations intended to negate or counter those matters that must be raised by the Defendants as an affirmative defense, e.g., the statute of limitations.

5.      Sequentially number paragraphs starting with the first paragraph of the Complaint.

6.      Attach copies of *all* documents referred to in the body of the complaint, *including the Resolution Agreement of 2007 (2007-RA)*, to the extent that copies of such documents are within his possession, custody, or control.

Plaintiff is hereby granted through and including **June 24, 2016,** within which to file his Third Amended Complaint consistent with this Order.

**In the event Plaintiff fails to file an amended complaint consistent with this Order within the time specified, or such later time as the Court may order, a judgment of dismissal may be entered without further notice.**

**IT IS SO ORDERED** this 25th day of April, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE